UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JULIAN JOHN CORYE,

                                        Plaintiff,

                        vs.

KEVIN CARR, E. REMILLARD, PETER            9:08-CV-46
KUSAYWA, BRADLEY CHASE;                    (J. Kahn)
                                        Defendants.

_____

JULIAN JOHN CORYE, Plaintiff *Pro Se*
STEPHEN J. REHFUSS, ESQ. for Defendants

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the
Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28
U.S.C. § 636 (b) and Local Rules N.D.N.Y. 72.3(c).

In this amended civil rights complaint, plaintiff alleges that on March 1, 2007,
defendants failed to protect him from an attack by other inmates at the Albany
County Correctional Facility and engaged in excessive force against plaintiff during
and after the attack by the other inmates. (Amended Complaint (AC)) at 4-5)(Dkt.
No. 25).  Plaintiff also alleges that after the incident, he was placed in a cell prior to
receiving any medical attention. (AC at 5-6).

Presently before the court is defendants' motion for summary judgment
pursuant to FED. R. CIV. P. 56.  (Dkt. No. 57).  Plaintiff opposes the motion, has filed
a response in opposition to the motion, and has cross-moved "in the alternative" for
summary judgment.  (Dkt. No. 59).  For the following reasons, this court will

recommend granting the defendants' motion in part and denying it in part. To the extent that plaintiff's papers can be interpreted as a cross-motion for summary judgment, the court will recommend denying the motion.

## DISCUSSION

**1.** **<u>Summary Judgment</u>**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of the "'the pleadings, depositions, answers to interrogatories, and admissions on the file, together with any affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-movant bears the burden of proof at trial, the moving party may show that he is entitled to summary judgment by either (1) pointing to evidence that negates the non-movant's claims or (2) identifying those

2

portions of the non-movant's evidence that demonstrate the absence of a genuine issue of material fact. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006)(citing *Celotex Corp.*, 477 U.S. at 23). The second method requires identifying evidentiary insufficiency, not merely denying the opponent's pleadings. *Id.*

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id.* A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## 2.   Facts

Plaintiff is currently incarcerated at Cayuga Correctional Facility, but was incarcerated at Albany County Correctional Facility (ACCF) in early 2007. (*See* AC). At his deposition, plaintiff stated that he had been assigned to the Three West tier at ACCF for at least one month. Rehfuss Aff. Ex. E (Deposition ("Depo.")) at 8)(Dkt. No. 57). Plaintiff was then assigned to keeplock[1] after an altercation on the Three West tier, and stated that he had been on his new tier for only one day prior to March 1, 2007. (Depo. at 6, 8).

Plaintiff states that on the morning of March 1, 2007, his asthma was bothering him, and he asked Defendant Remillard for permission to go to the medical

---

[1] Keeplock is disciplinary confinement in which an inmate is confined to his own cell. *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989).

unit. (AC at 4). Plaintiff also claims that on the morning of March 1, 2007, an unnamed inmate warned plaintiff that he was going to be attacked by other inmates. *Id*. At his deposition, plaintiff stated that he knew he would have problems on the new tier because "the tier was predominantly the down-towners, like the uptown/downtown thing, and being that I live uptown I'm considered a uptown resident." (Depo. at 7).

Based on the alleged warning from the other inmate, plaintiff packed his belongings, and when defendant Remillard let plaintiff out of his cell to go to the medical unit, plaintiff took all his belongings with him to the front gate. (AC at 4). Plaintiff reported to the "bullpen," which contains the two front gates that lead to the officers' desk. (AC at 4; Depo. at 7). Defendant Remillard asked plaintiff what he was doing, and plaintiff stated that he still wanted to go to the medical unit, but that he also could not continue to live on that tier. (AC at 4; Depo. at 7).

In his response to the motion for summary judgment, plaintiff states that when an inmate says "he can't live here," the statement is code for "if you leave me on this tier something bad will happen." Pl. Statement of Material Fact at ¶ 18 (Dkt. No. 59). Plaintiff states that defendant Remillard then locked plaintiff in between the two gates near the officers' desk. (AC at 4; Depo. at 7).

Plaintiff states that while he was locked between the gates, some inmates started talking to plaintiff and spitting on him. (AC at 4; Depo. at 10). In the amended complaint, plaintiff states that defendant Remillard saw this occurring and instructed plaintiff to go back to his cell. *Id*. At his deposition, plaintiff testified that

4

defendant Remillard left "for a second," and other inmates approached plaintiff while yelling at him. (Depo. at 10).  Plaintiff testified that one of the inmates spat on plaintiff.  *Id*.

Plaintiff testified that defendant Remillard came back, and asked plaintiff if he would go back to his cell. *Id*.  Plaintiff then requested to see the sergeant.  (AC at 4; Depo. at 10).  Plaintiff states that defendant Remillard opened the gate leading back to the tier, and told the inmates "ya'll can get him now" [sic].  *Id*.  Plaintiff states that at this point, approximately fifteen inmates "jumped" him.  (AC at 4; Depo. at 11).

At his deposition, plaintiff testified that the inmate attack lasted for about five minutes, but that he was "not really" injured during the fight.  (Depo. at 11).  Plaintiff testified that defendants Kusaywa, Remillard, Carr and Chase were involved in breaking up the fight.[2] (Depo. at 12-13).  Plaintiff states that when the altercation was over, defendant Kusaywa handcuffed plaintiff, brought him to the officers' desk, and told him not to move.  (AC at 5; Depo. at 11).  Plaintiff states that he heard either defendant Remillard or Carr tell defendant Kusaywa that plaintiff was "moving." (AC at 5; Depo. at 14-15).

At this point, plaintiff alleges that the guards attacked plaintiff. (AC at 5; Depo. at 14-15).  Plaintiff claims that defendant Kusaywa pulled on plaintiff's collar, causing him to fall backward and hit his head on the ground. (AC at 5).  Plaintiff claims that at least three or more officers participated in "stomping on" and kicking

---

[2] Plaintiff stated that he obtained these names during the course of this litigation. (Depo. at 13).

5

plaintiff in the face, neck, back, chest, and testicle.[3] (AC at 5; Depo. at 15).  At his

deposition, plaintiff claimed that he saw the defendants' faces.  (Depo. at 15).

Plaintiff testified that he did not know how long the attack lasted, and that he

lost consciousness once during the attack.  (Depo. at 16).  Plaintiff states that the

guards, including one who did not participate in the attack, picked him up, and that

defendant Carr grabbed plaintiff by the testicle. (AC at 5; Depo. at 16-17).  Plaintiff

testified that he was eventually escorted to a cell in another part of the facility.

(Depo. at 17-18).  Plaintiff states that he did not receive any medical care at that

time. (AC at 5).

Plaintiff testified when he was brought to the cell, the handcuffs were

removed. (Depo. at 18).  Plaintiff testified that he lost consciousness in the cell, and

vomited.  *Id*.  In his amended complaint, plaintiff states that at some point, he tried to

stand up and fainted again. (AC at 5).  Plaintiff testified that when he woke up, there

was blood on him and "all over" the cell floor, and three nurses were present in the

cell.  (Depo. at 19).  Plaintiff stated that he was transported to the medical unit, and

that emergency medical services were called to the facility. (Depo. at 19-20).

Plaintiff was taken to Albany Medical Center for treatment of his injuries.  (AC at 6;

Depo. at 21).

Plaintiff testified that he returned to ACCF later that night. (Depo. at 22).

Plaintiff was assigned to the Medical Unit, and stayed there for approximately seven

days before he was returned to the general population.  (Depo. at 23).  Plaintiff

---

[3] Plaintiff had only one testicle.  Plaintiff testified that he lost the other testicle because of delayed medical care for a urinary tract infection.  (Depo. at 16).

testified that his injuries on March 1, 2007 included a swollen wrist, a laceration on his forehead, and a slight concussion.  (Depo. at 19, 21, 23-24).  Plaintiff stated that he had dizzy spells, but that they eventually went away.  (Depo. at 24).  At the time of his deposition, plaintiff stated that he continued to have severe headaches and testicle pain.  *Id.*  Plaintiff testified that he was still waiting to see a specialist for the headaches, but that a doctor has told plaintiff that there is nothing else to do to treat the testicle pain. (Depo. at 25, 39).

### 3.    <u>Exhaustion of Administrative Remedies</u>

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a) requires an inmate to exhaust all available administrative remedies prior to bringing a federal action.  This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004).

Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.  The failure to exhaust is an affirmative defense that must be raised by the defendants. *Scott v. Del Signore*, 2005 U.S. Dist. LEXIS 6070, *12-15 (W.D.N.Y. Feb. 18, 2005) (citing *inter alia Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004)).  As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *Id.* at *12-13 (citing *Giano,* 380 F.3d at 675).

In *Jones v. Bock*, 549 U.S. 199, 218 (2007), the Supreme Court held that in

order to properly exhaust an inmate's administrative remedies, he must complete the administrative review process in accordance with the applicable state rules. *Id*. (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.  In *Woodford*, the Court concluded that the inmates did not properly exhaust their administrative remedies when their grievances were dismissed because the inmates had missed the deadlines set forth in the grievance procedure. *Id.* at 93.

The Inmate Grievance Program for county jails is outlined in Title 9 of the New York Code of Rules and Regulations, in Subtitle AA, governing the Commission of Correction. N.Y. Comp. Codes R. & Regs. (NYCRR), tit. 9, §§ 7032.1 *et seq.*  Section 7032.1 provides that the chief administrative officer of a local facility must establish and maintain a formal inmate grievance program, however, "[e]very effort shall be made to resolve inmate complaints in an informal manner." *Id.*

The regulations provide that the chief administrative officer of the local correctional facility shall designate a staff member to act as grievance coordinator. 9 NYCRR § 7032.4(e).  Facility staff must make grievance forms available to inmates who wish to file grievances.  *Id.* § 7032.4(d).  An inmate must file his grievance within five days of the act or occurrence giving rise to the grievance. *Id.*  The regulations contain minimum requirements for the investigation of an inmate

grievance. *Id.* § 7032.4(f)-(g).

The grievance coordinator must issue a written determination within five days of receipt of the grievance. *Id.* § 7032.4(i).  The inmate has two days within which to appeal an adverse determination to the chief administrative officer or his designee, who has five days to issue a decision on the appeal. *Id.* §§ 7032.4(j)-(k).  If the inmate is dissatisfied with the chief administrator's decision, the inmate has three days to appeal to the State Commission of Correction by indicating his or her desire to appeal on the inmate grievance form in the space provided. *Id.* § 7032.5(a).  The grievance coordinator of the local facility has three days after receiving the inmate's notice of appeal to send the appeal, the accompanying investigation report, and all the other pertinent documents to the Commission's Citizen's Policy and Complaint Review Council. *Id.* § 7032.5(b).  Section 7032.5 contains very detailed requirements for the timing of the appeal determination and the implementation of any favorable determination. *Id.* § 7032.5(d)-(e).

The Second Circuit has developed a "three part inquiry" to determine whether an inmate fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006)(citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004)).  The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether special circumstances justify the inmate's failure to comply with the exhaustion requirement. *Id*.

Although after *Woodford*, there was some question whether exhaustion could

be "excused," the Second Circuit has continued to apply the three factors articulated in *Brownell*, and has found error when the district court failed to conduct this analysis. *See Macias v. Zenk*, 495 F.3d 37 (2d Cir. 2007); *Harrison v. Goord*, No. 07 Civ. 1806, 2009 U.S. Dist. LEXIS 48478, *20-21 n.6 (S.D.N.Y. June 9, 2009)(citing *Vogelfang v. Riverhead County Jail Officers*, No. 07-1268, 2009 U.S. App. LEXIS 1914 (2d Cir. Feb. 2, 2009)(finding error in district court's failure to consider plaintiff's arguments that exhaustion should be excused); *Toomer v. County of Nassau*, No. 07-CV-1495, 2009 U.S. Dist. LEXIS 38160 at *25 n.8 (E.D.N.Y. May 5, 2009)(collecting cases)).

In this case, defendants argue that plaintiff has failed to exhaust his administrative remedies because he did not file a grievance complaining of this incident.  Defendants cite *Brownell* and argue that plaintiff should not be excused from the exhaustion requirement. Def. Reply Mem. at 10.  Defendants argue that the grievance procedure was "available to plaintiff." *Id.*  Plaintiff admitted that he had filed grievances in the past and should have known the proper recipient of the grievance.  Defendants also argue that instead of appealing to the Central Office Review Committee, he appealed to Sheriff Campbell.  Finally, defendants argue that the New York regulations provide that plaintiff could have filed his grievance after he was transferred to Downstate Correctional Facility. Def. Reply Mem. at 10.

In the amended complaint, plaintiff states that "[d]ue to mitigating circumstances, [he] was unable to file a timely grievance."  (AC at 6).  During his deposition, plaintiff testified that the officers in his housing unit "would not take" the

grievance. (Depo. at 31).  Plaintiff states that he could not even obtain a grievance

form, so he wrote the grievance on a plain piece of paper. (Depo. at 31).  Plaintiff

claims that he gave his grievance to a female sergeant at ACCF when he was "moved

. . . to the other side," but he never got a response. *Id*. (Depo. at 32).  Plaintiff has

submitted a copy of the "grievance" that he says he gave to the sergeant. Pl. Mem. of

Law, Ex. A (Dkt. No. 59-2).  Plaintiff claims that he was "constantly being

threatened not to put in grievances." (Depo. at 31).

Plaintiff also testified that he was familiar with the grievance process, and that

he filed "many grievances." (Depo. at 32).  He stated, however, that some of his

grievances appear to have been resolved "informally."[4] (Depo. at 33).  Plaintiff stated

that after he was transferred to Downstate, he attempted to write to Albany County

Sheriff James Campbell, but received no response. *Id.* at 33.  Plaintiff claims that he

sent Sheriff Campbell a copy of the grievance together with a letter of explanation.

(Depo. at 35).

The court must first note that defendants appear to cite the incorrect sections

of the NYCRR.  Defendants begin their argument citing to the appropriate section of

Title 9 of the NYCRR, and then make their argument based upon the sections that

apply to New York ***State*** inmates. Def. Mem. of Law at 8 (Dkt. No. 57-4).

Defendants argue that plaintiff should have filed a grievance with the "grievance

clerk," with an intermediate appeal to the Superintendent, and a final appeal to the

---

[4] As an example of an "informal" resolution, plaintiff testified about a grievance
regarding a pair of sneakers. (Depo. at 33).  He stated that he filed a grievance, but then the issue
was resolved by speaking with the Sergeant. Id.

Central Office Review Committee (CORC).[5] *See* 7 NYCRR § 701.5.  However, these sections apply to New York State facilities and not to local facilities. *Compare* 7 NYCRR § 701.5 *with* 9 NYCRR §§ 7032.1 *et seq.*  The ultimate appeal for a county jail inmate appears to be the Commission of Correction, *not* the CORC.

Defendants also cite 7 NYCRR § 1700.5(a), (b) for the proposition that plaintiff could have properly filed his grievance after he was transferred to Downstate.  Unfortunately, this section refers to inmate *personal property* claims and states that the facility in which the loss occurred must cooperate with the processing facility to provide investigative assistance as requested.[6] 7 NYCRR § 1700.5(b). This section has no application to a grievance regarding a claim of excessive force and does not discuss inmates who transfer from county to state facilities.  Thus, defendants' citation of this section does not support their argument that plaintiff could have filed a grievance *after* he was sent to Downstate.

While generally, transfer does not excuse the exhaustion requirement, the issue is more complicated when an inmate is transferred to the custody of a different "government." *See Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004); *Key v. Toussaint*, No. 05 Civ. 10461, 2009 U.S. Dist. LEXIS 82488, *14-17 (S.D.N.Y. Sept. 19,

---

[5] Defendant cite the incorrect section of the NYCRR for state facilities as well.  The sections relating to grievance procedures were re-numbered in *2006,* and thus, although defendants cite 7 NYCRR § 701.7 as the section generally governing the grievance procedure, that section was renumbered and is now section 701.5. *See Espinal v. Goord*, 554 F.3d 216, 224 (2d Cir. 2009) (discussing the 2006 amendments).  The differences in the regulations are minor, but the section numbers have changed. *Id.*

[6] The Second Circuit cited these two sections of the NYCRR in *Brownell* , however, the inmate in *Brownell* was transferred from one *state* facility to another, and the issue was, in fact, a claim of *lost property*. 446 F.3d at 312.

2009)(discussing transfer from state to federal custody).  The question then becomes whether the inmate would have had time to pursue his administrative remedies while still confined to the county facility. *Berry*, 366 F.3d at 88.  In *Berry*, the court found that the plaintiff would have had time to utilize the grievance mechanism prior to his transfer, however, the Second Circuit specifically stated that it was not considering "situations where only a brief interval elapses between the episode giving rise to the prisoner's complaint and the prisoner's transfer to the custody of another jurisdiction." 366 F.3d at 88 n.3.

Plaintiff submits the "grievance" that he filed.  Plaintiff testified that he filed previous grievances by writing the grievance out and giving it to the "officer," who then wrote down what the plaintiff wanted on the grievance form. (Depo. at 32). Plaintiff also testified that "nine times out of ten the grievance never gets to the grievance officer in charge." *Id.*  Plaintiff then stated that he also filed grievances by writing the grievance and putting it in the mailbox to the Superintendent, "and it gets to where it's supposed to." *Id.*

Although the grievance mechanism was clearly "available" in a technical sense, if plaintiff believed that he had given his grievance to an officer, and plaintiff was waiting for an answer, it is unclear when he would have realized that an answer was not forthcoming.  It appears that plaintiff was transferred to Downstate after March 26, 2007, but before April 29, 2007.[7]  It is therefore, unclear whether plaintiff

---

[7] Plaintiff testified that he was at ACCF for approximately a month and one week or a month and one half after the incident. (Depo. at 23).  Plaintiff's exhibits show that plaintiff was still in ACCF on March 26, 2007 because he asked for medical treatment on that day. Pl. Ex. E at 5 (ACCF Health Services Request form dated 3/26/07).  However, by April 29, 2007, he was at

would have had time to follow-up on the grievance and whether any alleged actions or threats by corrections personnel prevented plaintiff from filing or appealing his grievance.  Exhaustion is an affirmative defense that defendants bear the burden of raising **and** proving. *Jones v. Bock*, 549 U.S. at 211-17.  This court finds that based upon the evidence presented, there is at least a question of fact as to whether plaintiff should be excused from the exhaustion requirement.[8]  The court will not recommend dismissal for failure to exhaust at this time and will proceed to consider defendants' other bases for requesting dismissal.

## 4.   <u>Failure to Protect</u>

An inmate has a right under the Eighth and Fourteenth Amendments to be spared "the 'unnecessary and wanton infliction of pain.'"[9] *Hendricks v. Coughlin*, 942 F.2d 109, 112 (2d Cir. 1991)(citation omitted).  An inmate's allegation that a

---

Downstate. Pl. Ex. B (Plaintiff's Letter to Sheriff Campbell, written from Downstate and dated 4/29/07).

[8] The court does **not** find that plaintiff has exhausted his administrative remedies or even that plaintiff should be excused from the exhaustion requirement.  Rather, the court finds that there remains a question of fact based on the lack of evidence presented by defendants.  The court will recommend denial of the motion on this basis **without prejudice** should defendants submit affidavits, evidence, and additional argument.

[9] It is unclear in this case whether plaintiff was a pretrial detainee or a sentenced inmate at the time of the incident in question.  Defendants do not make this distinction, and have used the Eighth Amendment as a reference.  The Eighth Amendment applies only to sentenced inmates, while the **Fourteenth Amendment** protects pretrial detainees. *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996).  The Second Circuit has recently held, however, that the standards for evaluating a claim of deliberate indifference is analyzed by the subjective standard used in Eighth Amendment cases. *Caiozzo v. Koreman*, No. 05-4002, 2009 U.S. App. LEXIS 20928 (2d Cir. Sept. 22, 2009)(medical care context).  The Eight Amendment standard is also used in case of excessive force. *Jacoby v. County of Oneida N.Y.*, 9:05-CV-1254, 2009 U.S. Dist. LEXIS 83235, *13 (N.D.N.Y. Sept. 11, 2009)(citations omitted).  Thus, the Eighth Amendment deliberate indifference standard applies regardless of whether plaintiff was a pretrial detainee or a sentenced inmate at the time.

defendant was deliberately indifferent in failing to protect him from the violence of other inmates states a claim under section 1983. *Id.* at 113.  In order to state an Eighth Amendment or Fourteenth Amendment claim for failure to protect an inmate, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, ***and*** prison officials acted with deliberate indifference to that risk and the inmate's safety.  *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).  The plaintiff must show that prison officials ***actually knew of and disregarded*** an excessive risk of harm to the inmate's health and safety.  *Id.* at 837.  The defendant must be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists and the defendant must also draw that inference.  *Id.*

In this case, plaintiff alleges that defendant Remillard failed to protect plaintiff from an assault by other inmates.  There is absolutely no evidence that defendant Remillard knew of or disregarded a serious risk to plaintiff.  Plaintiff testified at his deposition that defendant Remillard "left for a second," while the plaintiff was allegedly arguing with other inmates. (Depo. at 10).  Even though plaintiff testified that when defendant Remillard opened the gate, he stated "ya'll can get him now," plaintiff does not indicate how defendant Remillard would have been aware that plaintiff was in danger.  Plaintiff also testified that he knew defendant Remillard before the incident, but he was just an "A-hole." (Depo. at 43).

Although plaintiff claims in his response to the motion for summary judgment that his statement to defendant Remillard that plaintiff could not live in the tier any

more was some sort of code, there is absolutely no indication that defendant
Remillard would have been aware of a danger to plaintiff from any particular imate
or group of inmates.  Thus, plaintiff's claim of failure to protect may be dismissed as
against defendant Remillard.

**5.**   **Excessive Force**

An Eighth or a Fourteenth Amendment claim that defendants used excessive
force has a subjective and an objective component. *Sims v. Artuz*, 230 F.3d 14, 20
(2d Cir. 2004).  The subjective component focuses on the ***motive*** for defendants
conduct, and requires a showing that the defendant had the necessary "level of
culpability," shown by actions that exhibit "wantonness" in light of the particular
circumstances surrounding the challenged conduct.  *Hudson v. McMillian*, 503 U.S.
1, 7-8 (1992); *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999).

The determination of whether action is "wanton" turns upon whether the force
"was applied in a good faith effort to maintain or restore discipline or maliciously
and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 7;
*Whitely v. Albers*, 475 U.S. 312, 320-21 (1986)(quoting *Johnson v. Glick*, 481 F.2d
1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973)).

The objective component focuses on the harm done, and the defendants'
conduct must be "'inconsistent with the contemporary standards of decency' and
'repugnant to the conscience of mankind.'"*Whitely*, 475 U.S. at 327.  The court must
ask itself whether the alleged conduct was objectively "harmful enough to establish a
constitutional violation." *Wright*, 554 F.3d at 268 (quoting *Hudson*, 503 U.S. at

8)(internal quotation marks omitted).  However, where the defendants' use force

maliciously and sadistically, the "contemporary standards of decency" are always

violated, whether or not a "significant injury" occurs. *Id.* at 268-69 (quoting *Hudson*,

503 F.3d at 9).

Thus, where a prisoner's claims, together with his evidentiary proffers could

"reasonably, if credited, allow a rational fact finder to find that corrections officers

used force maliciously and sadistically," then summary dismissal is not appropriate.

*Id.* at 269.  The lack of a serious injury is "relevant," but does not end the inquiry.

*Hudson*, 503 U.S. at 7.  The extent of the injury must be considered "in context."

*Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003).  The court must determine the

need for the force, the relationship between the need and the amount of force used,

the extent of the injury suffered, the extent of the threat to the safety of staff and

inmates, and any efforts made to temper the severity of a forceful response. *Whitely*,

475 U.S. at 321.

In this case, defendants request summary judgment based on their argument

that they were merely breaking up a fight and that any force used was to restore order

and to prevent plaintiff from harming himself or others.  Plaintiff acknowledges that

he was engaged in an altercation, but testified that he was not really injured as a

result of that altercation. (Depo. at 11).  Rather, plaintiff claims that defendants used

excessive force upon plaintiff ***after*** they broke up the altercation and after plaintiff

was handcuffed.

The court notes that defendants have not submitted ***any*** affidavits regarding

17

the facts surrounding this incident.  As stated above, the court must resolve all ambiguities in favor of the non-moving party. *United States v. Diebold, Inc.*, *supra*. Plaintiff did require hospitalization after the incident, and although the extent of plaintiff's injuries is unclear, there is a genuine issue of material fact regarding the incident.  Thus, the court will not recommend granting summary judgment on the excessive force claim.

**6.   <u>Medical Care</u>**

In order to state a claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  As in the excessive force cases, the subjective and objective elements apply. *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). *See Caiozzo v. Koreman*, No. 05-4002, 2009 U.S. App. LEXIS 22-23 (2d Cir. Sept. 22, 2009)(applying standard to pretrial detainees).  The objective element measures the severity of the deprivation, while the subjective element ensures that the defendant acted with a sufficiently culpable state of mind.  *Id.* at 184 (citing inter alia *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

In order to meet the first element of the standard, plaintiff must show that he has a sufficiently serious illness or injury.  *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  A medical condition has been considered "sufficiently serious" when there is a "condition of urgency," one that may result in death, degeneration, or extreme pain. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  The

seriousness of a plaintiff's medical need may also be determined by reference to the effect of denying the particular treatment. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 310 (S.D.N.Y. 2001)(citation omitted).  Thus, if unnecessary and wanton infliction of pain results from the denial of treatment, or if the denial of treatment causes the inmate to suffer a lifelong handicap or permanent loss, the condition may be considered "sufficiently serious." *Id.* (citing *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000)).

In order to meet the second element, plaintiff must demonstrate more than an "inadvertent" or negligent failure to provide adequate medical care. *Id.* (citing *Estelle*, 429 U.S. at 105-106).  Instead, plaintiff must show that the defendants were "deliberately indifferent" to that serious medical condition. *Id.*  In order to rise to the level of deliberate indifference, the defendants must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance*, 143 F.3d at 702).  As in the failure to protect claims, defendants must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

In this case, plaintiff is not complaining about the medical care that he ultimately received.  He appears to be claiming that defendants did not take him directly to the medical unit after the altercation.  Plaintiff's own exhibits show that whatever delay the plaintiff experienced before obtaining medical care was

19

minuscule.  A report written by Officer John Crowley[10] states that at 8:05 a.m., plaintiff was put in cell C-North 143. Pl. Ex. F at 11.  The report then states that "[a]t 8:20 AM Inmate Julian Corye was escorted to medical by Lt. Wojcik." *Id.*  The delay in plaintiff's care was approximately twenty minutes.  There is absolutely no evidence that the delay in treatment was serious.  Defendants motion for summary judgment may be granted on this issue.

 **WHEREFORE**, based on the findings above, it is hereby

 **RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 57) be **GRANTED** and the amended complaint **DISMISSED AS TO ALL DEFENDANTS only as to the claims of failure to protect and denial of medical care**, and it is

 **RECOMMENDED**, that the defendants' motion for summary judgment (Dkt. No. 57) be **DENIED WITHOUT PREJUDICE** as to the issue of failure to exhaust, and it is

 **RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 57). be **DENIED** with respect to the issue of excessive force, and it is further

 **RECOMMENDED**, that plaintiff's "cross-motion" for summary judgment (Dkt. No. 59) be **DENIED.**

 Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections

---

[10] Officer Crowley is not a defendant in this case and was not involved in any of the incidents alleged by plaintiff.

shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Date: September 30, 2009

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge